IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| OLIVER DERWIN THOMAS, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | 1:07CR42-2 |
| v. | ) | 1:11CV38 |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## ORDER AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Petitioner, Oliver Derwin Thomas, a federal prisoner, filed a Motion (Docket Entry 66)* to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, two motions for summary judgment (Docket Entries 75 and 78), and a motion to compel (Docket Entry 80) a response from Respondent to one of the motions for summary judgment. Respondent has filed a Response (Docket Entry 89), Petitioner has filed a Reply (Docket Entry 103), and the matter is now ready for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.[1]

---

* This and all further cites to the record are to the criminal case.

[1] Petitioner has also filed two motions to amend his Section 2255 Motion. The first was granted by prior order (Docket Entry 104), however, it was granted only insofar as Petitioner was permitted a period of time to add any potential claim under *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). Petitioner has not availed himself of the opportunity to file any such claim. Instead, Petitioner filed a second motion to amend (Docket Entry 106) his Section 2255 Motion, this time to raise arguments related to a case recently decided by the Fourth Circuit Court of Appeals, *United States v. Fisher*, 711 F.3d 460, 646 (4th Cir. 2013). As explained in greater detail below, it would be futile to permit any such amendment, because *Fisher* is factually inapposite to the facts as plead in this case, and as set forth in the proposed amendment, and consequently of no value to Petitioner.

## Factual and Procedural Background

On January 30, 2007, Petitioner was indicted on three counts. In pertinent part, Count One charged him with distribution of cocaine ("crack), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Docket Entry 1.) On May 7, 2007, Petitioner pled guilty to this count (Docket Entry 27 and Minute Entry 5/7/07) and he was sentenced on August 20, 2007 to 280 months of imprisonment, a special assessment of $100.00, and eight years of supervised release (Docket Entry 28 and 8/20/07 Minute Entry). Petitioner appealed and contested the reasonableness of his sentencing, which the Fourth Circuit Court of Appeals affirmed as being reasonable in *United States v. Thomas*, 347 Fed. Appx. 888 (4th Cir. 2009). Petitioner filed the instant Motion on January 10, 2011. (Docket Entry 66.)

## Petitioner's Claims

Petitioner's claims are essentially based on the fact that the Assistant United States Attorney who prosecuted his case, David P. Folmar, Jr., was not properly licensed to practice law at the time. In fact, his license was suspended for failure to keep current with the Continuing Legal Education requirements of the North Carolina State Bar.

Specifically, Petitioner asserts that (1) Mr. Folmar's prosecutorial misconduct violated his Sixth Amendment rights and deprived him of a fair trial, (2) by practicing law despite being unauthorized to do so, and in violation of certain ethical rules, Mr. Folmar committed a fraud upon the Court and upon Petitioner, (3) Mr. Folmar was not "under the oath of office" when he prosecuted Petitioner and that "[t]his is a necessary condition" to exercise

authority on behalf of the federal government, (4) the Court lacks jurisdiction over Petitioner, because of the various deficiencies described above in regards to the lapse of Mr. Folmar's licensure, (5) trial and appellate counsel were constitutionally ineffective for not preserving and arguing on appeal issues related to Mr. Folmar's conduct, and (6) a recently decided case—*United States v. Fisher*, 711 F.3d 460, 646 (4th Cir. 2013)—entitles him to withdraw his guilty plea. (Docket Entries 66, 103, and 106.)[2] Petitioner also raises additional overlapping claims in his Reply (Docket Entry 103), which are addressed further below.

## Discussion

Petitioner first asserts that the prosecutor who prosecuted his criminal conviction (David P. Folmar, Jr.) did so while he was suspended from practicing law for failing to meet continuing legal education requirements. (Docket Entry 66 at 7.) This, Petitioner claims, was prosecutorial misconduct that violated his Sixth Amendment rights and deprived him of a fair trial. (*Id.*) The claim is meritless. "When asserting a prosecutorial misconduct claim, a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005).

To begin, the documents in the record indicate that Mr. Folmar was suspended from the practice of law in November of 2003 pursuant to an order of suspension for failure to comply with continuing legal education requirements, that he knew he was suspended to

---

[2] The undersigned has attempted to respond to all of the many variations of Petitioner's claims. To the extent that any have not been specifically discussed, they should still be denied for essentially the reasons set out herein.

prosecute cases as an Assistant United States Attorney from November 2003 until March 2009, and that he has since been suspended from the practice of law. (Docket Entries 66 and 103.) The undersigned will presume these facts to indeed be the case throughout this Recommendation, unless otherwise indicated.

Although the practice of law by an unlicensed or improperly licensed prosecutor is an unusual situation, it is not unique or unprecedented. In fact, it has occurred on several occasions in courts across the country. Most courts facing the dilemma have ruled that a defendant does not have a constitutional right to a properly licensed prosecutor, that the prosecution of a case by an unlicensed or improperly licensed prosecutor does not automatically violate a defendant's rights, and/or that a defendant must show some sort of prejudice in order to challenge his conviction. *See Hamilton v. Roehrich*, 628 F. Supp. 2d 1033, 1050-54 (D. Minn. 2009); *Munoz v. Keane*, 777 F. Supp. 282, 284-87 (S.D.N.Y. 1991), *aff'd sub nom. Linares v. Senkowski*, 964 F.2d 1295 (2d Cir. 1992); *People v. Carter*, 77 N.Y.2d 95, 106-07, 566 N.E.2d 119, 123-24 (1990); *Ali v. Minnesota*, Civil No. 09-1389, 2010 WL 145280, at *5 (D. Minn. Jan. 8, 2010). The Fourth Circuit has also made a statement to this effect. *See United States v. McNeill*, 389 F. App'x 233, 235 (4th Cir. 2010) (considering a defendant's claim based on lack of prosecutor's law license, but rejecting that claim by noting that "there was no showing of prosecutorial misconduct" and the defendant had "not shown that he was prejudiced"). At least one court has held that a prosecution pursued by a prosecutor without a proper license is still valid because, although not qualified for her job as a prosecutor, she was nevertheless given the job by the government. This made her a "*de facto*

4

officer" whose acts on behalf of the government were valid. *See Parker v. United States*, Nos. 4:98CR00236 GH, 4:03CV00058 GH, 2006 WL 2597770, at *13-15 (E.D. Ark. Sept. 8, 2006); *United States v. Deaton*, Nos. 4:99CR87GH, 4:04CV2252GH, 2005 WL 1922877, at *3-5 (E.D. Ark. Aug. 9, 2005).

In contrast, there is an Illinois state court case holding that prosecutions by an unlicensed prosecutor are per se invalid. *People v. Dunson*, 316 Ill. App. 3d 760, 763-70, 737 N.E.2d 699, 702-06 (2000). However, the court in *Dunson* relied solely on state, not federal, law and declined to decide whether or not a due process violation had occurred. *Id.* No case of which the Court is aware has held that there is a federal constitutional right to a properly licensed prosecutor.

Based on this case law, the Court agrees with the cases concluding that there is no general federal right to a properly licensed prosecutor, and concluding that a defendant or petitioner must ordinarily show prejudice from the lack of licensing in order to raise a claim based on a prosecutor's licensing deficiencies. Here, any misconduct or fraud by the Assistant United States Attorney prosecuting Petitioner's case was directed toward the Court or his office, not Petitioner. Petitioner has produced nothing to show that his case was impacted in any way by the Assistant United States Attorney's lack of a proper license, nor has Petitioner produced evidence suggesting any Government wrongdoing. The undersigned can see no violation of Petitioner's Sixth Amendment right or any other constitutional right. This is particularly so, given that Petitioner, following a written plea

agreement and factual basis (Docket Entries 26-27), entered a guilty plea, but provides nothing to demonstrate his factual innocence as to his conviction.

Second, Petitioner asserts that by practicing law despite being unauthorized to do so, and in violation of certain ethical rules, Mr. Folmar committed a fraud upon the Court and upon Petitioner. (Docket Entries 66 at 13 and 103 at 3-7, 14.) However, as addressed above, no fraud was directed towards Petitioner and Petitioner fails to explain how Mr. Folmar's conduct impacted his case. Unsupported, conclusory allegations do not entitle Petitioner to even a hearing, much less to the sort of relief sought here. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). To the extent that Folmar lied to or defrauded the Court, that is a matter between Folmar and the Court. Unless Petitioner could show that he was harmed or prejudiced in some manner (and he has not) then his conviction and sentence are not affected.

Third, Petitioner contends that Mr. Folmar was not "under the oath of office" when he prosecuted Petitioner and that "[t]his is a necessary condition" to exercise authority on behalf of the federal government. (Docket Entries 66 at 16 and 103 at 7-12.) In a final overlapping claim Petitioner contends that the Court lacks jurisdiction over Petitioner, because of the various deficiencies described above in regards to the lapse of Mr. Folmar's licensure. (*Id.* at 12-13.).

As an initial matter, Respondent correctly points out that the indictment in this case was signed by then United States Attorney Anna Mills Wagoner, then Assistant United

States Attorney David P. Folmar, Jr., and the grand jury foreperson. (Docket Entry 1.) In other words, Folmar was not the only individual agent of the Government to sign the indictment. Respondent also contends that at the time, the general practice in the Middle District of North Carolina was that either the Criminal Chief or the Deputy Criminal Chief for the United States Attorney's Office appear before the Grand Jury. (Docket Entry 89 at 9.) Respondent contends further that a review of the records maintained by the United States Attorney's Office for the Middle District of North Carolina shows that Criminal Chief Barret appeared and that Mr. Folmar was not present. (*Id.*) However, other than this assertion, Respondent has not placed anything in the record in support.

Nevertheless, the Court need not resolve this matter, because even assuming Mr. Folmar had been present when the grand jury was in session and had presented the indictment to the grand jury, Petitioner has still failed to establish prejudice. Federal Rule of Criminal Procedure 6(d)(1) limits persons appearing before the grand jury while it is in session to "attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device." However, under *United States v. Mechanik*, 475 U.S. 66, 71, 106 S.Ct. 938, 942 (1986), dismissal of the indictment under this Rule is not automatic when an unauthorized person is present. Rather, the question is subject to harmless error analysis. Petitioner must show that "the violation substantially influenced the grand jury's decision to indict or [that] there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374 (1988) (citation omitted).

It is true that Petitioner pled guilty, while *Mechanik* involved a case where a petit jury had later rendered a guilty verdict. Part of the stated rationale for the Supreme Court's decision was that the petit jury's verdict rendered harmless any errors committed in the charging decision. *Mechanik*, 475 U.S. at 73, 106 S. Ct. at 943. The rule against unauthorized persons being present before the grand jury was premised on preventing the indictment of innocent persons. This is not a concern where a person is later found guilty after trial because "we *know*, as surely as courts 'know' anything, that the convicted defendant is not a member of the class of beneficiaries of the rule." *United States v. Fountain*, 840 F.2d 509, 515 (7th Cir. 1988) (discussing *Mechanik* ). Still, for the same reason, the harmless error standard of *Mechanik* also applies after the entry of a guilty plea. *See United States v. Hefner*, 842 F.2d 731, 733 (4th Cir. 1988) (applying harmless error standard after conditional guilty plea).

Here, the prosecutor was not properly licensed and was, therefore, a potentially unauthorized person in the grand jury room. Still, Petitioner has not shown that Folmar's lack of a valid license actually affected the decision to indict or the presentation to the grand jury at all. Put another way, had Folmar been properly licensed, the presentation of evidence and the decision to indict would have been the same. Likewise, there is no indication of a different result if Folmar's lack of license had been discovered prior to the presentation and another Assistant United States Attorney had presented the evidence. Folmar's "unauthorized" presence did not affect matters. This claim should be denied.[3]

---

[3] Any argument that issues regarding Mr. Folmar's licensure status entitle Petitioner to relief for a violation of the secrecy provisions set forth in Federal Rule of Criminal Procedure 6(e) also fails under the analysis set forth above.

Petitioner's overlapping argument that Mr. Folmar's conduct deprived this Court of jurisdiction is also without merit. The district court has "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Petitioner plead guilty to committing an offense against the laws of the United States, distributing cocaine in violation of federal law. Consequently, the undersigned cannot see how the licensure status of Mr. Folmar is relevant to issue of jurisdiction. This argument lacks merit and should therefore be rejected.

Petitioner also essentially contends that appellate, and perhaps trial, counsel provided ineffective assistance by failing to discover Folmar's lack of a license, investigate the matter further when it came to light, and pursue the matter further with the courts.[4] (Docket Entry 103 at 1-3.) Correspondence attached to Petitioner's Reply (Docket Entry 103) indicates that after Petitioner plead guilty and was sentenced, but before his direct appeal had been

---

[4] Petitioner may also be asserting ineffective assistance of appellate counsel regarding his criminal sentence. (Docket Entry 103 at 2.) Specifically, Petitioner appears to maintain that appellate counsel was constitutionally ineffective for failing to allege that on direct appeal Petitioner's trial counsel was ineffective for failure to object to the trial court's assessment of the sentencing factors set forth in 18 U.S.C. § 3553(a). (*Id.*) This argument fails, however, because the reasonableness of Petitioner's sentence was affirmed by the Fourth Circuit on direct review and cannot now be reargued here. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (concluding that issues fully considered on direct appeal from conviction may not be recast under the guise of a collateral attack by way of motion to vacate or correct sentence). Moreover, this claim is vague and conclusory, because Petitioner fails to specify which Section 3553(a) factor trial counsel should have contested and on what grounds it should have been contested. *See Nickerson*, 971 F.2d at 1136. Finally, Petitioner did not raise this issue in his Section 2255 Motion, which was timely filed, and he cannot raise the issue now without running afoul of the limitation statute set forth in 28 U.S.C. § 2255(f). It is true that claims raised for the first time in an amended motion are timely if they "relate back" to claims raised in the original filing. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); Fed. R. Civ. P. 15(c). However, Petitioner does not assert that this claim (if it is indeed a claim) relates back to his original Section 2255 motion. And, even if he did make this argument, it would fail because the original motion dealt entirely with the issues set forth above related to Mr. Folmar. Consequently, there is no reason to treat this argument as a motion to amend the original Section 2255 motion. For all these reasons any Section 3553(a) argument must fail.

resolved, Petitioner's appellate counselor learned of the lapse in Mr. Folmar's licensure. (*Id.* at 21.) Counsel communicated this information to Petitioner—again, after conviction but prior to the resolution of direct appeal—and communicated further that he did "not feel that [Mr. Folmar's suspension] will in any way benefit you or contribute to you having your Judgment dismissed or changed." (*Id.*) As explained herein, appellate counsel was correct.

This claim is judged by the *Strickland* standards. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson*, 971 F.2d at 1136 (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Ineffective appellate assistance claims are judged using the *Strickland* test set out previously. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745 (1983); *see also Smith v. Murray*, 477 U.S. 527 (1986); *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and

raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. *Jones*, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994)).

Any claims regarding trial or appellate counsel's purported ineffectiveness must fail. The lack of a valid license by a prosecutor is a rare circumstance that a defense attorney would not ordinarily be expected to investigate. There is also no indication that defense counsel in this case had any particular knowledge prior to sentencing which should have caused her to investigate Folmar's licensing status. Defense counsel did not perform improperly by not looking into the matter. While it is true that appellate counsel learned of Mr. Folmar's suspension while Petitioner's direct appeal was pending, Petitioner was not prejudiced by counsel's failure to investigate, nor was counsel ineffective for failing to argue the matter to the Fourth Circuit. Had counsel raised this issue with the courts it would not have changed the outcome of the case. There was no problem with the indictment or plea agreement in the case. At most, upon disclosure of the licensing issue, Folmar would simply have been replaced by a different prosecutor; and the matter would have continued just as it did. And when the Fourth Circuit essentially did consider the essence of Petitioner's claims in another case, it rejected them. *United States v. Nelson*, No. 09-4297, 2010 WL 4676614 (4th Cir. Nov. 18, 2010) (unpublished) ("Finally, review of the record indicates that Nelson has failed to establish a violation of his constitutional right to due process of law or prejudice

warranting reversal of the district court's judgment arising from the fact that the Government's attorney had had his license to practice law suspended. Therefore, Nelson is not entitled to dismissal of the indictment or relief from his conviction and sentence."). Petitioner cannot demonstrate either the error or the prejudice to support a finding of ineffective assistance of counsel.

Petitioner also suggests that Folmar did not have authority to negotiate and enter into a valid plea agreement on behalf of the government. (Docket Entry 103 at 15-17.) He adds that Folmar was not an agent who could enter into a binding agreement on behalf of the government. This is incorrect. Although Folmar's license was suspended and the government would obviously not have allowed him to continue to prosecute cases if it had known this fact, it did not know it and did give him the authority to prosecute cases and enter plea bargains on its behalf. Further, even if the Court were to hold that Folmar was not authorized to enter valid agreements on behalf of the government, this would not void Petitioner's plea agreement. "The law governing the interpretation of plea agreements is an 'amalgam of constitutional, supervisory, and private [contract] law concerns.'" *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)). And contract law principles are dispositive in most cases. *Id.* Turning to contract law, an agreement entered into by an unauthorized agent is a voidable, not void, agreement. The government can choose to ratify the agreement by continuing to abide by it. *Perri v. United States*, 53 Fed. Cl. 381, 401–02 (2002), *aff'd* 340 F.3d 1337 (Fed. Cir. 2003). Here, the government did continue with the agreement. Petitioner does not allege that he did

not receive all that he was due under the plea agreement. At no point has the government sought to void the agreement or not followed its terms. Thus, whether Folmar is treated as an authorized agent of the government, the plea agreement was valid and remains so. Nor can Petitioner assert that his plea was not knowing and voluntary because he was not aware of Folmar's suspension or because the indictment and plea agreement were invalid. As just explained, the indictment and plea agreement were valid; therefore, there is no problem with Petitioner's guilty plea.

Petitioner asserts further that Mr. Folmar had an impermissible "conflict of interest." (Docket Entry 103 at 17-18.) However, even where defense counsel is involved in an alleged conflict, a petitioner must show that representation of counsel is adversely affected by an actual conflict of interest. *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991); *see Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 1244 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). Courts have held that to show an adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued, but was not because of the conflict. *See Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996) (citing cases); *see also Patterson v. Virginia Dept. of Corrections*, No. 96–7438, 1998 WL 957464, *3 (4th Cir. Sept. 22, 1998) (unpublished) (adopting this approach). If a petitioner makes this showing, prejudice is then presumed. *Mickens*, 535 U.S. at 172 n.5, 122 S. Ct. at 1244 n.5. Applying similar standards to the present case, Petitioner would have to show that the

alleged "conflict of interest" affected Folmar's handling of the case in a way that harmed Petitioner. Again, he has not done so.

Petitioner also contends that his plea was not made knowingly, willingly, or intelligently because he was "threaten[ed] and pressure[d]" by Mr. Folmar to plead guilty. (Docket Entry 103 at 16.) Specifically, Petitioner alleges that "Mr. Folmar personally threatened me with threats of prosecuting my family members, the mother of my children and me with dire prosecution consequences if I refused to enter into a plea agreement. I was told under no uncertain terms, that in the event I relay any of the discussions that were made in regards to the pleas [sic] agreement, that not only would I suffer but my loved ones as well. I felt the only way I could escape placing my family members and wife in jeopardy was to reiterate exactly what Mr. Folmar was telling me to say and do." (*Id.*)

Here, the district court determined that the plea entered by Petitioner was knowing and voluntary. (Docket Entry 43 at 24.) Whether Petitioner faced a difficult choice between pleading guilty or proceeding to trial does not equate to coercion or duress or otherwise render his plea involuntary. *See United States v. Williams*, 47 F.3d 658, 661 (4th Cir. 1995) ("A prosecutor's threats to seek a harsher indictment are constitutionally legitimate even though the prosecutor's goal in making those threats is to convince the defendant to waive his right to plead not guilty. . . . A criminal justice system that tolerates and encourages plea negotiations must allow prosecutors to impose difficult choices on defendants even though the risk of more severe punishment may discourage a defendant from asserting his trial rights."); *Harman v. Mohn*, 683 F.2d 834 (4th Cir. 1982) ("It is generally within a prosecutor's

14

discretion merely to inform an accused that an implicated third person will be brought to book if he does not plead (guilty)" and "[i]f (an accused) elects to sacrifice himself for such motives, that is his choice.") (citation, internal quotation omitted); *United States v. Diaz*, 733 F.2d 371, 375 (5th Cir. 1984) (concluding that the defendant's plea was not involuntary merely because of desire to extricate relative from good faith prosecution.). Moreover, a review of the Plea and Rule 11 Transcript establishes that the statements which Petitioner made to the Court stand in stark conflict with his belated, self-serving allegation that counsel coerced him into pleading guilty. (Docket Entry 43 at 11 ("Has anybody made any threats or promises in order to induce your plea of guilty and signing of this plea agreement, Mr. Thomas? No. Sir."); *id.* at 22 ("Has anybody made any threat or promise to get you to get you to do anything that you're doing here today? Mr. Thomas? No, sir.").) Further, Petitioner is bound by the statements he made at the Plea and Rule 11 hearing and those statements cannot be set aside merely on the basis of his post-judgment assertions to the contrary. Rather, Petitioner's statements "constitute a formidable barrier" to this post-judgment attack. *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629 (1977); *accord United States v. Lemaster*, 403 F.3d 216, 220-23 (4th Cir. 2005) (affirming summary dismissal of § 2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing). Petitioner has failed to allege facts to show that the prosecutor engaged in any improper behavior to obtain the plea agreement or to overcome his statements to the Court that his plea was voluntary.

Last, Petitioner contends that he should be permitted to amend his Motion (Docket Entry 66) and raise arguments regarding a case recently decided by the Fourth Circuit Court of Appeals, *United States v. Fisher*, 711 F.3d 460, 646 (4th Cir. 2013). (Docket Entry 106.) However, any such amendment would be futile. This is because *Fisher* is factually inapposite from this case and simply does not apply. In *Fisher*, law enforcement's false statements in a sworn search warrant amounted to impermissible government conduct because the search of the defendant's residence led to evidence forming the basis of the charge to which he pled guilty. *Id.* at 466. *Fisher* "present[ed] [the] highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution's case."[5] *Id.* As demonstrated above, nothing comparable is alleged here. Nor does Petitioner assert new facts in his motion to amend that are similar to those set forth in *Fisher*. Because any attempt by Petitioner to amend his 2255 motion to raise arguments related to *Fisher* is futile, his Motion to Amend is denied. *See United States v. Hodge*, No. 01–7216, 2002 WL 170733, at *1 n.* (4th Cir. Feb. 4, 2002) ("We note that the district court did not abuse its discretion by denying Hodge's motions to amend his § 2255 motion as such amendments would have been futile.")

In the end, Petitioner has discussed and argued Folmar's behavior from every possible angle and raising all available claims. The result of the matter can be summed up in much less space. No matter how Petitioner presents his claim, whether it is based on the Constitution, relies on the Federal Rules, or otherwise, Petitioner must show that Folmar's

---

[5] To the extent Petitioner's Reply (Docket Entry 103) to the Respondent's Response (Docket Entry 89) requests the appointment of counsel and an evidentiary hearing, these requests are denied. As explained, each of Petitioner's claims fails as a matter of law and none of these claims even allege factual matters that would require a hearing. Neither the appointment of counsel, nor a hearing are warranted.

licensing problem somehow had a negative impact on his case. He has not. Despite much unsupported speculation, Petitioner has pointed to nothing in his case that was affected or changed by Folmar's lack of a valid license. He points to nothing that would justify vacating his conviction or sentence. His claims should be denied in their entirety.

**IT IS THEREFORE ORDERED** (1) that Petitioner's motion to compel (Docket Entry 80) a response to Petitioner's motion for summary judgment be **DENIED** and (2) that Petitioner's Motion to Amend (Docket Entry 106) also be **DENIED**.

**IT IS THEREFORE RECOMMENDED** (1) that Petitioner's motion to vacate, set aside or correct sentence (Docket No. 66) be **DENIED** and that this action be dismissed; and (2) that Petitioner's motions for summary judgment be **DENIED** (Docket Entries 75 and 78).

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 13, 2013